# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 5, 2012

No. 11-60618

Lyle W. Cayce
Clerk

LEONORA MURRAY; STEPHEN MURRAY, SR.; M.B., a minor, by and through her maternal grandmother, Leonora Murray,

Plaintiffs - Appellants

v.

GENERAL MOTORS, L.L.C.; SKINNER CHEVROLET BUICK PONTIAC GMC,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:10-CV-188

Before KING, HIGGINBOTHAM, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Leonora Murray, Stephen Murray, Sr., and M.B.[1] (collectively, "Appellants") appeal the district court's decision dismissing their claims against Skinners[2] Chevrolet Buick Pontiac GMC Truck, Inc. ("Skinners"), and denying

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] M.B. is a minor. Leonora Murray, M.B.'s grandmother, filed suit on M.B.'s behalf.

[2] Although Appellants named this entity as "Skinner Chevrolet Buick Pontiac GMC," their brief corrects the name to the name given in the text. Thus, we use "Skinners" rather

No. 11-60618

their motion to remand the case to state court. The district court concluded that Skinners—the only non-diverse defendant—was improperly joined to defeat diversity jurisdiction.[3] Appellants argue that they pleaded valid claims against Skinners; therefore, they contend that the district court improperly denied their motion to remand the case to state court and dismissed their claims against Skinners. We AFFIRM and remand for further proceedings as appropriate.

## I. FACTS AND PROCEDURAL HISTORY

Stephen Murray, Sr., and Leonora Murray (the "Murrays") purchased a new, 2006 model Chevy HHR (the "vehicle") from Skinners in 2005. The vehicle was manufactured by General Motors ("GM"). Stephen Murray, Sr., alleges that he purchased the vehicle because the salesman at Skinners told him that it was an "economical, dependable, and good car." He also alleges that the sticker on the vehicle stated that it had airbags and the salesman told him it had power steering. Appellants allege that the Murrays took the vehicle to Skinners on several occasions for service and that GM issued several recall notices on the vehicle, but Skinners failed to notify them of such notices.

In 2009, Leonora Murray was driving the vehicle when the left front spindle broke, the steering mechanism failed, and the front airbags failed to deploy. The vehicle veered off of the road, hit several objects, and flipped over, injuring Leonora Murray and M.B.

Appellants filed suit against Skinners and GM in state court. GM filed a notice of removal, alleging that Appellants improperly joined Skinners for purposes of defeating diversity jurisdiction. GM is a citizen of Delaware, and

---

than "Skinner" as the shorthand reference for this entity.

    [3] The term "improper joinder" has also been referred to as "fraudulent joinder"; however, we have previously adopted the term "'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder' . . . ." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc).

No. 11-60618

Skinners and Appellants are citizens of Mississippi. GM and Skinners also filed separate motions to dismiss Skinners from the suit. The parties extensively briefed the issues before the district court, and GM, Skinners, and Appellants offered additional evidence to support their respective claims. After considering this evidence and the parties' arguments, the district court concluded that because Appellants would be unable to establish a cause of action against Skinners, Appellants' motion to remand would be denied. The district court granted Skinners's and GM's motions to dismiss Skinners from the suit.

Appellants requested that the district court certify its order dismissing Skinners and denying their motion to remand as a final order pursuant to Federal Rule of Civil Procedure 54(b), and the district court granted their motion and stayed the case pending the outcome of this appeal. Appellants timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the district court's order, which was certified as final under Rule 54(b), pursuant to 28 U.S.C. § 1291. *See United States v. Caremark*, 634 F.3d 808, 814 (5th Cir. 2011). Although Appellants claim that the district court did not have jurisdiction over this suit, as complete diversity was lacking, federal courts generally have jurisdiction to review their own jurisdiction. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002). Thus, we have jurisdiction to determine whether the district court properly concluded that it had diversity jurisdiction pursuant to 28 U.S.C. § 1332.

We review the denial of a motion to remand de novo. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). To determine whether a defendant has been improperly joined, the district court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.

3

No. 11-60618

2004) (en banc).  If the plaintiff can survive a Rule 12(b)(6) challenge, ordinarily, there is no improper joinder.  *Id.*  However, if the complaint states a claim, but "has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."  *Id.*  "In deciding whether a party was improperly joined, we resolve all contested factual issues and ambiguities of state law in favor of the plaintiff."  *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).  Removal raises federalism concerns because the effect of removal is to deprive a state court of jurisdiction; therefore, we strictly construe the removal statute, resolving "any doubt about the propriety of removal . . . in favor of remand."  *Id.* at 281-82.  Applying this analysis, we turn to whether Appellants have established the possibility of recovery from Skinners on any of their claims.

## III.  DISCUSSION

Ordinarily, a defendant cannot remove a lawsuit to federal court under 28 U.S.C. § 1332 absent complete diversity between plaintiffs and defendants.  *See Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992) ("The diversity statute requires complete diversity of citizenship: a district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as one of the defendants." (internal quotation marks omitted)).  If, however, the removing party can show that a non-diverse defendant has been improperly joined to defeat diversity jurisdiction, the case may be removed.  *Cf. Salazar v. Allstate Tex. Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006) (noting that "under the fraudulent joinder doctrine, federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined nondiverse and/or in-state defendant").  There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state

No. 11-60618

court." *Smallwood*, 385 F.3d at 573 (internal quotation marks omitted). In this case, GM—the removing party—argued that there was no possibility that Appellants could recover against Skinners and that, therefore, Skinners was improperly joined to defeat diversity jurisdiction. We analyze each of Appellants' causes of action in turn to determine whether it established the possibility of recovery against Skinners.

A.    Express Warranty

Appellants claim that the district court erred in refusing to remand their case and in dismissing their express warranty claim against Skinners, as they contend that there is a possibility that they could recover from Skinners on this claim. The district court found that Skinners could not be liable for breach of an express warranty, as there was no agreement between Skinners and Appellants; rather, the only express warranty was made by GM to Appellants.[4]

We hold the district court did not err in finding that there was no possibility of recovery against Skinners on Appellants' express warranty claim. Appellants essentially contend that Skinners is liable for personal injury damages for breaching the manufacturer's warranty. In an attempt to show Skinners's involvement, they contend that one of Skinners's salesmen "embrac[ed] GM's warranty . . . ." However, under Mississippi law, Skinners

---

[4] Appellants also raise an argument about an extended warranty they purchased through Skinners. Appellants claim that they were told that the extended warranty would cost $1,500, but they later received a bill for $3,000. First, we note that Appellants are not claiming damages for alleged overbilling or failure to repair under an extended warranty; they are claiming damages for personal injury. We fail to see how this allegation could give rise to such a damages award. Additionally, even if they sought the proper damages for the breach of this warranty, we cannot consider Appellants' claims related to the extended warranty purchased through Skinners. The complaint filed in state court (and never amended) failed to mention an extended warranty. We may not consider post-removal filings "to the extent that they present new causes of action or theories not raised in the controlling petition in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). The theory that Appellants raised concerning the extended warranty was not raised in the petition filed in state court; therefore, we cannot consider this aspect of Appellants' express warranty claim.

No. 11-60618

cannot be held liable for "embracing" the express warranty made by the manufacturer, even if Skinners's salesman used the manufacturer's warranty to sell the car. *See Wright v. Paul Moak Pontiac, Inc.*, 828 So. 2d 201, 202 (Miss. Ct. App. 2001). In *Wright*, a Mississippi appellate court found that despite the fact that a car salesman used the manufacturer's warranty as a "sales tactic," he was not acting "in any capacity other than as an agent of [the manufacturer]" and, therefore, the dealership could not be held liable for breach of an express warranty. *Id.* The cases cited by Appellants to support their position that a car dealer can be held liable for breaching a manufacturer's warranty are inapposite. *See Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 875 (Miss. 2006) (addressing a manufacturer's liability for breach of its own express warranty); *Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So. 2d 324, 326 (Miss. 1988) (discussing a car dealer's alleged liability for a salesman's statement that the dealer would fix an issue with a used car).

Further, section 11-1-63(h) of the Mississippi Code provides that an innocent seller "shall not be liable" for any action pursuant to section 11-1-63(a)—which includes a claim for breach of an express warranty—unless the seller either: (1) "exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought"; (2) "altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought"; or (3) "had actual or constructive knowledge of the defective condition of the product at the time he supplied the product." MISS. CODE ANN. § 11-1-63(h) (1972 & Supp. 2011).[5]

---

[5] Section 11-1-63 of the Mississippi Code is also referred to as the Mississippi Products Liability Act ("MPLA"). Subsection (h) of the MPLA is referred to as the innocent seller exemption.

6

No. 11-60618

Appellants contend that the "innocent seller" exemption does not prohibit them from bringing an express warranty claim pursuant to the Mississippi Uniform Commercial Code (the "Mississippi UCC").[6]  However, although the Mississippi Supreme Court has held that the MPLA does not preclude a claim for breach of warranty, *see McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 940 (Miss. 2011) (holding that the MPLA "does not abrogate . . . any warranty claims" (citation and internal quotation marks omitted)), it is still subject to the innocent seller exemption in a products liability action.  *See Gardner v. Cooksey*, No. 2:11-cv-255KS, 2012 WL 968026, at *3-4 (S.D. Miss. Mar. 21, 2012). Appellants are seeking damages for the injuries to Leonora Murray and M.B. that were allegedly caused by the failure of the steering mechanism and the airbags.  This claim is subject to the MPLA limits by the express terms of the Mississippi UCC.[7]  Because we hold that Appellants' claim as pleaded falls under the MPLA, the innocent seller exemption applies.

Indeed, the Mississippi legislature specifically provided in section 11-1-63(h) that "[i]t is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product."  MISS. CODE ANN. § 11-1-63(h).  Although Appellants pleaded that Skinners was not just a conduit of the vehicle, their vague and conclusory allegations allowed the district court to pierce the pleadings to conduct a summary inquiry.  *See Smallwood*, 385 F.3d at 573.  To support its argument that it was a mere conduit of the vehicle, Skinners provided an affidavit stating that it "did not design or manufacture the car," "alter or modify the air bags or steering," or "install" or "test the air bags

---

[6] Mississippi adopted the Uniform Commercial Code.  *See* MISS. CODE ANN. § 75-1-101 *et seq.* (1972).

[7]  Section 75-2-715 of the Mississippi UCC—labeled "Buyer's Incidental and Consequential Damages"—excepts the matters "otherwise provided in" § 11-1-63 from the general rule that consequential damages available to a buyer for a seller's breach of warranty include "injury to [a] person."

and steering."    An employee of Skinners also stated in her affidavit that "Skinners Chevrolet made no express warranties or other express factual representations about the subject car, other than as a mere conduit of information from the manufacturer of the car." Appellants offered no evidence to show that Skinners was anything more than a conduit for the vehicle. Thus, for the reasons stated above, we find that Appellants could not recover from Skinners on a breach of an express warranty claim.

B.    Implied Warranty

Appellants next contend that they have established a possibility of recovery on their breach of implied warranty claim, because the MPLA does not prevent a plaintiff from bringing such a claim. *See McKee*, 64 So. 3d at 940. The district court, relying on section 11-1-63(h), held that Skinners was immune from Appellants' breach of implied warranty claim because it was an innocent seller. As we discussed above, we agree that the MPLA did not abrogate all UCC warranty claims, but the innocent seller exception applies here as well.

In sum, we agree with the district court—and with four other federal district courts in Mississippi—that if the plaintiff seeks damages for personal injury as a result of an allegedly defective product, the innocent seller exemption applies to a breach of implied warranty claim. *See Gardner,* 2012 WL 968026, at *3-4; *Jenkins v. Kellogg Co.*, No. 4:08-cv-121, 2009 WL 2005162, at *4 (N.D. Miss. July 6, 2009); *Land v. Agco Corp.*, No. 1:08-cv-012, 2008 WL 4056224, at *3 (N.D. Miss. Aug. 25, 2008); *Jones v. Gen. Motors Corp.*, No. 3:06-cv-00608, 2007 WL 1610478, at *3, *5 (S.D. Miss. June 1, 2007).    For this reason, we conclude that the district court properly held that Appellants had no possibility of recovering against Skinners on a breach of implied warranty claim.

C.    Fraudulent Misrepresentation

Appellants argue that the district court erred in holding that they failed to plead their fraudulent misrepresentation claim with particularity and in

dismissing the claim.  Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." State-law fraud claims are subject to this requirement.[8]  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Id.* at 551 (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

Here, the only allegations in the complaint concerning fraud stated that "the defendants negligently, gross [sic] negligently, and fraudulently misrepresented and made omissions to the public, including the plaintiffs, about the safety and maneuverability of the 2006 Chevrolet HHR automobile."  The complaint contains no descriptions of the specific statements that Appellants claim were fraudulent, or when and where such statements were made.[9]  The complaint is entirely devoid of specific allegations about Skinners's alleged fraudulent misrepresentation.  Therefore, we conclude that the district court did not err in finding that Appellants failed to demonstrate any possibility of recovery on their fraudulent misrepresentation claim.[10]

---

[8] Mississippi Rule of Civil Procedure 9(b) contains a similar requirement.  *See* MISS. R. CIV. P. 9(b) (requiring "the circumstances constituting fraud or mistake [to] be stated with particularity").  If the case was remanded, Appellants' claim would likewise fail in state court.

[9] Before both the district court and this court, Appellants argued that Skinners's salesman fraudulently convinced Stephen Murray, Sr., to purchase an extended warranty for $1,500, but the Murrays later received a bill for almost $3,000.  However, as noted above, we may not address this claim because we cannot consider post-removal filings "to the extent that they present new causes of action or theories not raised in the controlling petition in state court."  *Griggs*, 181 F.3d at 700.

[10] We have recognized that a district court should not find fraudulent joinder and dismiss a fraud claim for failure to satisfy the pleading requirements of Rule 9(b) without first granting leave to amend.  *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). Appellants here, however, did not seek leave to replead their fraudulent misrepresentation claim in the district court and have not advanced such an argument before this panel.  Rather,

D.    Negligent Misrepresentation

On appeal, Appellants argue that they sufficiently pleaded a negligent misrepresentation claim because Skinners's salesman told them that the car was "equipped with a dual frontal airbags [sic] system that worked" when, in fact, the airbags failed to deploy.  Additionally, they contend that the salesman negligently told them that the car was "good and dependable" when it was not.  The district court held that Appellants could not proceed with their negligent misrepresentation claim because it was barred by the innocent seller exemption, and we agree.

Although "negligence claims can be brought alongside strict liability claims," *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 846 (S.D. Miss. 2010), a party may not disguise a products liability claim as a negligence claim to avoid dismissal.  *See, e.g.*, *id.* at 844 (concluding that the plaintiff's "common law negligence claims fail because they are mere restatements of the claims brought under the MPLA, and . . . are not supported by sufficient evidence"); *see also McKee*, 64 So. 3d at 940 (noting that the plaintiffs' "negligence claim 'fail[s] to present any new discussion or claim that does not relate back to the . . . products liability claim which ha[s] previously been determined to be legally insufficient to survive summary judgment'" (alterations in original) (quoting *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 406 (Miss. 2006)).

Here, Appellants essentially argue that Skinners negligently promised that the frontal airbags would deploy and that the car was good and dependable. However, Appellants' negligent misrepresentation claim is nothing more than an attempt to disguise a breach of warranty based upon a design or manufacturing defect claim as a negligent misrepresentation claim in order to avoid the innocent seller exemption of section 11-1-63(h).  This they cannot do.

they have consistently argued that their fraudulent misrepresentation claim has been pled with sufficient particularity, an argument that we reject.

No. 11-60618

*See Moss*, 935 So. 2d at 406 (dismissing a negligence claim because it was merely an attempt to "reargue the warranty claims previously discussed under the guise of negligence").  Since the innocent seller exemption applies, and Appellants cannot show that Skinners had actual or constructive knowledge of the defective condition, *see* MISS. CODE ANN. § 11-1-63(h), Appellants fail to establish a possibility of recovery against Skinners on their negligent misrepresentation claim.

E.     Negligence or Gross Negligence

Finally, Appellants argue that the district court improperly dismissed their negligence claims.  The complaint alleges two ways that Skinners was negligent: (1) by failing to notify Appellants about manufacturer's recalls of the frontal airbags; and (2) failing to identify and repair defects, notify Appellants of defects, or provide transportation while the defendants repaired the defects.

We reject Appellants' contention that the failure to notify the Murrays about several manufacturer's recalls that allegedly applied to the vehicle constituted negligence, because Skinners had no post-sale duty to warn under Mississippi law.  *See Noah v. Gen. Motors Corp.*, 882 So. 2d 235, 239 (Miss. Ct. App. 2004).  Appellants have cited no authority to establish that a car dealer has a post-sale duty to warn them of a manufacturer's recall, and, in response to GM's evidence showing no relevant recalls, they have made no showing that the recalls actually applied to their vehicle.

Next, Appellants contend that Skinners negligently failed to identify and repair the defects that caused the accident.  In essence, Appellants claim that Skinners was negligent in failing to locate and fix a design defect.  However, we agree with the district court that the innocent seller exemption set out in section 11-1-63(h) applies to immunize Skinners from this claim.  As noted above, a party may not disguise a products liability claim as a negligence claim to avoid dismissal.  *See, e.g.*, *McKee*, 64 So. 3d at 940.  Appellants' claim is nothing more

11

No. 11-60618

than a creative attempt to hold Skinners liable for a design defect and for failing to warn them about the defective nature of the vehicle. Because Appellants cannot show that Skinners exercised substantial control over the frontal airbags or steering mechanism, altered or modified the car in a way that caused the injuries, or had actual or constructive knowledge of the defective condition, as required to overcome the innocent seller exemption, *see* MISS. CODE ANN. § 11-1-63(h), Appellants fail to establish a possibility of recovery against Skinners for negligence or gross negligence.

## IV. CONCLUSION

As indicated above, GM has established that Appellants do not have a possibility of success on any of their claims against Skinners—the only in-state defendant. Accordingly, the district court did not err in denying remand and dismissing Skinners. As a result, the case against GM should be remanded to the district court for further proceedings as appropriate.

AFFIRMED and REMANDED.